Case number 15-3666, Thomas C. DiBiase v. LaShann Eppinger. Oral argument not to exceed 15 minutes per side. Michael Robert Houston for the appellant. You may proceed. Good morning. May it please the Court. I'm Michael Houston on behalf of the appellant, Thomas DiBiase. With the Court's permission, I'd like to reserve three minutes for rebuttal. Dale McNaughton is the man who committed the burglaries at issue in this case. And the jury found my client, Tom DiBiase, guilty by association. It was easy for the jury to lose its way in this case, given the close association between Mr. DiBiase and Mr. McNaughton. They were co-workers. They were friends. They were neighbors. They spent a lot of time together. And at the trial, the State asked the jury to draw an adverse inference from that fact. They said that the critical thing about this case, the thing the jury had to ask itself was, why would an older man, Tom DiBiase, be spending so much time with a younger man, Dale McNaughton? Well, Patricia Hale, who was Dale McNaughton's girlfriend, testified why. And that's because they worked together every day. It was unreasonable for the trial court to deny Mr. DiBiase's motion for judgment of acquittal as a matter of law at the conclusion of the State's evidence in this case. So you're right. I mean, clearly McNaughton was involved, but there was – it's pretty clear there was someone aiding and abetting, right? I mean, for at least one of them, I guess it's the Stewart one, you have evidence that he picks up a cell phone, waits, and someone comes in the silver Buick to pick him up. If it's not Tom DiBiase, who is the other person? I don't know, Your Honor, but it's the State's burden to prove who it was beyond a reasonable doubt. And the fact – But you would agree the evidence shows there were two people involved in these crimes? Well, I would agree the evidence shows that someone came and picked Dale McNaughton up, but I think that goes to what the State needs to prove in order to establish the elements of the offense. They need to prove that whoever it was that came and picked him up – and again, I don't think they have shown that it was Mr. DiBiase, but even if they had, they would need to show that when that call was made, the person who came and picked Mr. McNaughton up knew that they were complicit in a burglary. All right. You would agree that they can prove their case with circumstantial evidence? Of course, Your Honor. All right. And isn't this circumstantial? I mean, you're saying there's no evidence. Well, there is circumstances that you can reasonably infer the elements, can't you? Respectfully, Your Honor, I disagree. Obviously, all of the evidence in the case is circumstantial, and circumstantial evidence is sufficient to prove criminal liability. But I think the key fact is when you break these crimes into their elements, you will find that for at least one element of every charged offense, there was not evidence that would allow a jury to find beyond a reasonable doubt. But how can you say that? Because the jury sat, they heard the evidence, and I agree with you that there's no one bit of evidence that was like a smoking gun or conclusive. But the jury looked at all of those, put them together, weighed those, and found that Mr. DiBiase was the person who did this. Your Honor, I'm not contending that the State's case is deficient because there wasn't a smoking gun. But you said that no reasonable jury could find this, and I'm saying that that sort of flies in the face of what actually happened. Respectfully, Your Honor, I disagree. I think that, again, the fact that the State was able to make a very strong case on some elements of the offense is entirely irrelevant under Jackson if the evidence is missing for one element of the offense. And so it's only one element. The State has to prove every element beyond a reasonable doubt. So what's the one element that you say there was not even circumstantial evidence for which the jury could use to support their finding? Your Honor, for example, when it comes to the Ivancic burglary, there is no evidence that Mr. DiBiase was the one who was involved in that crime. Isn't that the one where your letter confirmed that the jewelry from her jewelry, Ivancic's jewelry, was in his bedroom? That's correct, Your Honor. That was what the trial record showed was that he had. I mean, when you add everything else up, that seems really hard with the double deference that applies here to say there's no evidence. I think that the Eleventh Circuit has held in an analogous circumstance that the mere presence of stolen property on the defendant's property does not establish his participation in burglary. No, I understand. You know, when you isolate it out, you can go through the U.S. reports or the F-3rds and find the case where that's all there was, and I would agree. If that's all there was, you have a problem. But that's where the other circumstantial evidence, which I agree, a lot of it can lead to lots of different inferences. But when you have that and this, I'm hard-pressed to believe that doesn't satisfy the double levels of deference. I think it's necessary, Judge Sutton, to focus on what exactly that other evidence is. We know that the state appellate court drew some incorrect conclusions about what the record showed, in addition to just the confusion about whose jewelry it was that was found in Mr. DiBiase's home. Are we allowed to reverse them because their conclusions are somewhat incorrect? Is that our standard under HEPA? No, no, of course not, Your Honor. But I bring that up because I think it shows that, although the standard for habeas relief in this context is very high, as we acknowledge, this is not a model opinion from the state appellate court of clarity to which the court, you know, should not, the court needs to express its opinion. We rarely see them anyway. Fair enough, Your Honor. But I think, again, when you look at, it is just not the case, for example, that it is true that my client sold stolen property belonging to the Ivancics. That was the conclusion of the state appellate court with respect to the pawn shops. And that's just not what the record shows. The state contends that the Ivancic burglary took place on March 12th. My client visited a pawn shop on March 15th. But the record is absolutely clear that he was alleged to be alone in the store and the only thing he sold were coins that were not stolen. So that is just not a fact that shows that he's liable in this case. The other thing— Okay, so, okay, fine. You've still got the jewelry from that exact burglary in his bedroom. You have these guys talking to each other all the time. They know each other. DBS, he's seen in the silver Buick, usually driving it lots of times. So far, so good. I'm not exaggerating anything, right? No, Your Honor, you're not. Now what about the—now you have the phone call, which you have to say is incriminating, and it's got coded language about the Luger, which is stolen from this robbery. Your Honor, I would respectfully disagree with you on two particular points. The first is that I do not believe that the phone calls are incriminating. I think we provided transcripts of those calls for the convenience of the court. Mr. DBS— Well, is it unfair to talk about there being coded language referring to the gun? No. Ms. Hale testified that she was talking in code about a gun. But the other point on which— Okay, so, but why isn't that a meaningful fact, just that by itself? Well, it's critical—Your Honor said something that is not quite correct, which is there's no mention at all of a Luger handgun on any of these calls. It was a Luger that was stolen from the Avancics. But I think even if the jury could infer from these calls that Ms. Hale was lying about the fact that Tom had no idea that Dale hid this gun without his knowledge, that Ms. Hale was lying about this being an operative gun as opposed to a fake gun, and that Tom DiBiase was lying on these calls about knowing about this gun, having any idea what's— Even if the jury drew all three of those inferences, especially the firearm enhancement, is still not established as a matter of law. I'm not doing the firearm—I'm not doing that. I'm still just talking about the Avancic burglary because that's something stolen in it. You have him talking about, in code, about a gun. And why do you talk in code other than the possibility you don't want someone, i.e. the police, to know what you're talking about? The state did not establish beyond a reasonable doubt that this was the gun. I understand, but it's a gun. I mean at some point you just have to start saying, okay, it's starting to get pretty implausible that there's anybody else that could have done this. Well, again, Your Honor, Mr. DiBiase is the one who's denying repeatedly throughout these calls that he had any involvement in these crimes. He denies that he knows anything about—even once he sort of seems to figure out that she's referring to a gun in code. He says, I don't have that. I never had that. I don't know what's going on with that. And the jury heard that, and they decided how to assess it, what inferences to draw from the testimony of these witnesses and the evidence that was in the record. And they drew the inferences that were unfavorable to Mr. DiBiase. And looking at that totality of evidence, they found him guilty as an accomplice in this. So I don't know how you can say that there's no evidence there. It's true that much of this—none of this, of course, is direct evidence. It's all circumstantial. But the jury weighed all of those circumstances and came to a particular result. That's right, Your Honor, but they never should have been allowed to do so because the constitutional error occurred when the trial court denied Mr. DiBiase's motion for judgment of acquittal before the case ever got to the jury. At that moment, when Mr. DiBiase's attorney made that motion, what the trial court should have done is looked at every element of every offense and ensured that there was evidence in the record to match up to it. And again, I think the firearm enhancement is a great example of a case where—of a charge where the trial court just didn't perform that constitutionally required function under Jackson because there's no evidence in the record at all that the Luger handgun that Dale stole from the Yvonsek residence, that Tom DiBiase ever knew about it. There's no testimony that it came up. There's no testimony even in the prison phone calls, which is really the state's whole ballgame with respect to this firearm enhancement. There's no testimony that that was the gun that was stolen. And I think, again— Isn't this a strict liability? I mean, it's a one-year enhancement. This is not a 15-, 20-year, 10-year enhancement. It's a one-year enhancement. And isn't it strict liability? No, Your Honor, absolutely not. The Freymire case and the Shabazz case, both decided by the Ohio Court of Appeals, and referring to the Supreme Court of the United States— Gilbert case. I'm not sure I'm familiar with that case, Your Honor. Okay. I thought it makes it clear that it's not. It doesn't matter. The state of mind doesn't matter how much you know or don't know. And I guess it was— State of Ohio v. Gilbert. I mean, I don't know if I— What was the date, Your Honor? 2009. Well, I know certainly the Shabazz and Freymire cases were decided after that, as was the Roseman case from the Supreme Court of the United States. I mean, I would say one of the problems here— and I realize DiBiase wasn't lucky enough to have you as counsel below, and maybe all this wouldn't have happened had that been the case— but this argument wasn't really pressed to the state courts. And one of the unfortunate realities due to that is the state courts didn't really have a chance to say, as a matter of state law, here's what you need to know or don't need to know as to the firearm specification. But that, of course, is not the state's fault. But I do think—I agree with you. There's something funny about this. But the best time to have figured that out would have been, in this case, on direct appeal. Well, I agree with Your Honor about that. But I think that the state is the one who put Mr. DiBiase on trial. And they have the burden to say what are the elements of the offense and what is our evidence to prove it. They were the one who was obligated to come forward and explain to the court what the Ohio courts have made clear in Freymire and in Shabazz, which is that the common law rule is that a defendant is not liable for knowing his accomplice had a gun unless he actually knew about the gun. It is not a strict liability offense. Thank you. Okay. You get your full rebuttal. We'll hear from the state. May it please the Court. My name is Jerry Fosna. I represent the warden. And we ask this court to affirm the judgment of the district court that the state court's sufficiency determinations on DiBiase's burglary convictions were not unreasonable. And I agree with all of the statements made by the panel. There are questions. Questions. Questions aren't answers. What? We were just asking questions. It doesn't prove what we think. Okay. Well, then I agree with your questions. And I agree that your questions were correct. And I would probably have answered them affirmatively if I were asked. But anyway, moving on. The sufficiency claims are subject to the two layers of deference, as you noted. And in light of that standard, the state court's judgment and rejection of the sufficiency claim is controlling in this habeas case as Parker v. Matthews held. And the state appellate court determined that DiBiase purposefully assisted McNaughton, and that's really all that needs to be proven. You have to agree it's a pretty thin case. I mean, any circumstantial case is relatively thin. I mean, unless you have an eyewitness, it's going to be thin. I mean, we'll agree that Mr. DiBiase was pretty cunning, and he developed a pretty sophisticated plan to engage in these burglaries, and the engaging in a pattern of corrupt activity is warranted here. Let's take the Stewart one. So what's the evidence of the Stewart one that suffices to show that a juror, beyond a reasonable doubt, could have found he was an aider and abetter part of the team? And, yeah, as I noted, opposing counsel agrees that Dale McNaughton performed these burglaries, and he was convicted of the burglaries. All we have to show is that DiBiase aided and abetted. And although he argues that they worked together, there's no evidence in the record that they performed any legitimate work. The work was performing these burglaries. And Patricia Hale said, DiBiase showed up in this silver Buick every day to pick Dale McNaughton up, and they left every day in the silver Buick driven by DiBiase. The cell phone calls show that their cell phones pinged off the towers near their homes in the morning, or right before. Cell phone stuff. I mean, if they're calling each other, I get that. But the cell phone towers gets you just close. That's just more like, we all know, blackletter law, proximity to crime doesn't prove you committed a crime. It's all together, though. I'm not finished. I think I just made two statements. But in addition, then we have them going to Dale McNaughton being seen in the area. He asked Mrs. Stewart, the mother of the person who was burglarized, to sign this petition regarding casinos in Ohio. And then she said no. But that's McNaughton acting, right? Right. But again, he's performing this burglary in the area. And then a neighbor sees him across the street getting into a silver or gray Buick and getting picked up with a bag of stuff. And the silver and gray Buick, as Patricia Hale testified, was driven by DiBiase, and he picked Dale up in the silver and gray Buick every day. But there's no evidence that that's what happened here, right? It's evidence that it happened every day. Patricia Hale said DiBiase picked Dale McNaughton up to go to work every day in the silver and gray Buick. And there's no evidence that anybody drove the silver and gray Buick until DiBiase got arrested. Why isn't it likely that it's DiBiase's son? Because there's no evidence DiBiase's son drove the silver and gray Buick until DiBiase got arrested. He was only found in a car. If it's so clear it's DiBiase, why is there no evidence of who owned the Buick? I don't know the circumstances of that. It appears that the car was registered to auto dealership, and perhaps they never registered the title if they purchased it. I don't really know the circumstances under which that car was taken from the dealership. He was never charged with anything, so I assume it was a legitimate purchase, and he just didn't register the title. If there's circumstantial evidence, might one say, circumstantially, that if the state could find out that Tom DiBiase owned the Buick, it would have put it in? That's pretty good evidence. Well, I think as well in the... It's true. That suggests maybe it's not true. Maybe the son owned the car. So a detective testified that he went to scope out these places. Once he found out Tom DiBiase and Dale McNaughton were the people that went to these precious metal dealers to drop off the jewelry that was stolen, that they got his name, they went to his house, and the silver and gray Buick's in his driveway. No evidence... But his son lives with him. There's no evidence that the son lived with him. No evidence Dale McNaughton lived in the place. No evidence that... I think even they were asked... The evidence showed the son did live on and on. Maybe I'm wrong. It was asked of the detective, Dale McNaughton didn't live in that house and Sergio Reynolds did not live in that house. And he said, correct. It was DiBiase's sister and her husband and a niece. And they didn't mention the other people, but I think there were like five people living in the house. But they specifically said, Sergio Reynolds didn't live in that house and Dale McNaughton didn't live in that house. And the detective said, correct. And that's all in the trial court record. So, in addition, then, in the transcript, there's also statements from Sergio Reynolds that it was the first time as to this Fairmont. I don't know how good we did, but we did all right for the first one. So, arguably, that could be construed as that's his first time doing it. And I think he also... After DiBiase went to prison, he started using DiBiase's phone. No evidence that he used DiBiase's phone before. And I think Patricia Hill... You're referring to the son now? Right. Okay. I'm still referring to the son, yes. And as Patricia Hill testified, or she said in the phone calls, she would say that, your car, and he'd say, which one? And they were talking about things related to the car. And Sergio Reynolds and DiBiase were also talking about the license plate. And he said, why don't you call Renza and tell him that you forgot that the plates were in the car, and you switched them from the Delta to the Regal, trying to get him out of the fact that these plates were stolen. So what's the answer to the firearm specification? Is it a strict liability statute? It's not a strict liability, I don't believe. The case law says that it is, you just have to prove the mens rea for the underlying crime. Once you've proven the underlying crime, then if there is possession on or about your person or under your control, at the time you committed that, at the time the underlying crime is committed, then you're guilty of the firearms. You have to, okay, you said it's not strict liability, but is there anything under the Ohio law that suggests that the person had to have some prior knowledge that a crime was being, was going to be committed and that the gun was, was going to be used in that crime? No, there is no requirement under Ohio law that you prove that he knew. The cases cited by opposing counsel all relate to whether, relate to the knowing possession of a firearm as to a charge of aggravated burglary or armed robbery or aggravated robbery, which he was not charged with. He was just simply charged with burglary, and the possession of a weapon is not a requirement of the charge of burglary. So those require knowing possession. But for the aiding and abetting or the accomplice liability, if the primary, I mean, if the principal is committing a crime, I mean, I guess it's feasible that the accomplice could be involved and have no, you know, science or knowledge that a crime was being committed. The case law in Ohio says very clearly. What is the case you're citing? I want to know your authority. It sounds to me like you talked about strict liability because you said if the mens rea for the underlying crime is there, then the specification kicks in by simple possession, which to me, it sounds like strict liability. What is your authority? So what is your authority that that is the standard? There is State v. Powell and State v. Chapman. Those are two Ohio Supreme Courts. Are they in your brief? Yes, I cited both of those in my brief. I also believe I cited State v. Moore. That's a court of appeals decision that's cited in my brief. I did not cite State v. Capp. That's an 8th District Cuyahoga County case. That's 2016-Ohio-295. And it says, once the state proved Capp was complicit in the commission of the underlying offenses, the state did not also need to separately prove Capp's complicity as to the associated firearm specs. And it goes on to cite a case, Knorr. Because firearm specification is not a separate offense and does not stand alone, it does not carry a mens rea separate from the commission of the predicate offense. And in all of those cases, they say that the accomplice can be found liable for possession by the principal offender. And so what's your answer to the best typo on the other side, which is, you know, the aider and abettor just has no idea this has happened? He doesn't have to know that it's happened. And they say as well as to, you're guilty even if you steal the firearm during the burglary. Which is what happened here, right? Right. And that you don't have to know that the aider and abettor, or the principal offender, had the firearm. And they say it's also, finding a gun during a burglary is just as dangerous as bringing a gun to a burglary. But that's, I mean, it's clear Ohio case law. He has no evidence, or no citations, I mean, his citations refer to a crime of aggravated burglary where knowing possession of the firearm is required. There's no knowing possession of a firearm required in burglary. And Dale McNaughton committed the burglaries. There's evidence that DiBiase aided and abetted him in the commission of those burglaries. And there's evidence that a firearm was stolen during the burglary and DiBiase aided in that burglary. And so he's guilty as if he were the principal offender. And this is a matter of state law. Right. How does the habeas review standard kick into a dispute as to state law? As to state law, you're bound by the state court's determinations as to state law. But you're not sure what state law means. I mean, let's just say we read your cases, we read his, and we go, I don't know what it means. Well, arguably, if you don't know, then you certainly can't grant a writ based on that. I mean, at worst, you could certify the question to the Ohio Supreme Court. But I believe the case law is pretty clear here. There's no unreasonable application of federal law. Right. Right, I know. It's determined by the U.S. Supreme Court. Right, right. It's a state law question. I agree. But I'm saying that if you think there might not have been sufficient evidence as to the firearm specification, what would you be basing that on? You'd have to be basing that on Ohio law. Well, I should go back to insufficiency of evidence. But, yeah, and that's their argument, I think. Right. And I believe the case law is very clear. They may argue that it's wrong, but they need to take that up with the legislature. The legislature has provided this. And in the case law, the courts say the legislature amended the firearms specification statute in 1996 to add a three-year firearm spec to the one-year firearm spec, which DiBiase received here. And they said nowhere in that did they change the statute to require amends rea, or to change that an accomplice can be guilty the same as the principal offender. You would agree normally we presume with criminal statutes, criminal sentencing statutes, that we presume some type of amends rea. Isn't that the norm? It seems really funny. As to the statute, I mean, as to the, like, actual offense, I would agree. I don't agree that that's the case as to specifications. Which is another way of saying sentencing enhancements. Right. I would have said no, that normally we do have that. I mean, it's so strange, because you would say in this case, even if DiBiase had said, hey, listen, I'll do this whole thing on one condition, no guns. We're not bringing guns and we're not stealing guns. And McNaughton says fine. And then he sneaks one, you know, he either steals one without telling him or he brings one without telling him and he's stuck with the enhancement. Yes, he would be. I mean, you should not get into business with someone, I guess, into business, working business with someone that you can't depend on to agree to your requirements. I mean, I don't, if you get into criminal activity with a criminal, I don't know that you can depend on a criminal to comply with a requirement that you don't steal guns. But I would assume that's what the statute goes for. We don't want people stealing guns from houses. And so here you go. This gun was stolen from a house and we don't know where the gun is. And it's eminently more dangerous for the people in the society that this gun is out there. And going back to the citations to the phone calls, opposing counsel said he acted like he didn't know about the gun. There's nothing saying he didn't know about the gun in the transcript. It says, I don't know where it is at, meaning presently, I would assume. And then it said, yeah, I never had the black guy over here. But aren't you comfortable accepting his assertions that DiBiase didn't know about the gun? Can't we decide the case? Are you comfortable deciding the case on that assumption or not? I agree that he may not have known about it at the time that Dale MacDonald stole it, but I would not agree that he was not aware of it at the time he got into the car or afterwards. I think the evidence shows he knew about the gun. But, again, as I will state, referring back to the case law, it's clear the case law says that he doesn't have to know that his accomplice stole the gun, the principal offender stole the gun. And going back to the standard of review, the only question, as stated by Coleman v. Johnson, that the U.S. Supreme Court has held this court to is whether the state court's finding that evidence is sufficient is so insupportable as to fall below the threshold of bare rationality. And opposing counsel and DiBiase have not shown that here. And this court should affirm the judgment of the district court. Thank you. Just a few very brief points, Your Honor. My friend made a reference to the fact that these call logs establish Mr. DiBiase's presence at the scene of these crimes. They don't. The testimony was that each one of these cell phone towers services an area that is three to five miles apart, which means each one services an area between seven and 20 square miles. That is a massive area. And the mere fact that I can demonstrate that someone was present within a seven to 20-mile square area does not show that they were present at this house at this time. Detective Vetter also testified that a cell phone call does not always ping off the nearest tower. That has to do with technical aspects of the way that the calls are routed and how busy any particular tower is. So I think there's plenty of reasonable doubt from the state's testimony about whether Mr. DiBiase was present. But I think the discussion with my friend was very enlightening with respect to the gun enhancement most of all. And that's what I would like Your Honors to focus on, because I think it's the clearest example of a case where the elements of the crime are just entirely missing. As I understood, counsel— I don't think it's a crime. I think that might be the thing you guys are—ships past in the night. Your Honor, we do have a very significant disagreement about the requirement of Ohio law. And I would submit that the Freymire case is dispositive on this point. Freymire was decided after my client's trial. But Freymire is also very clear that it didn't, quote, did not make new case law. It merely analyzed Ohio law as it existed at the time. And that makes sense, because as the Supreme Court of the United States said when it analyzed the very similar 924C statute under federal law, it reached conclusions about the intent requirement based on common law principles. And so the Supreme Court majority in Roseman is discussing exactly the hypotheticals that Judge Sutton was discussing here today. What if the defendant just has no knowledge that there's a gun? It's true under Ohio law that an enhancement can apply when the defendant— the principal steals a gun as opposed to brings his own. That's not what we're contesting. But I think it is absolutely clear from Freymire under Ohio law and from the Supreme Court of the United States discussing the common law principle, which is the same one at issue, that the defendant has to know about the gun. Otherwise, it's just fundamentally unfair. When the legislature wants to create strict liability crimes, those are very rare in the law. And the legislature does so explicitly. But this is not a strict liability crime. It is a knowing crime. The defendant has to know about the— Where does it say no? What part of it—I mean, I'm inclined to agree with the state that it—I don't see where it has a state of mind. I mean, I think the Quaker burglar is stuck. If the co-burglar has a gun— Your Honor, I would—again, I would direct the court to the Freymire case where they refer to the fact that, quote, Freymire could not possibly share the culpability required for the commission of aggravated burglary or aggravated robbery, that is, robbery with a gun, where possession of a deadly weapon was an essential element for knowledge that a deadly weapon may be used was required in order to support her convictions. So I think regardless of whether the statutory text is explicit about this point— Regardless? Yeah, regardless, Your Honor. The case law from the Ohio Court of Appeals interpreting Ohio law is clear that the defendant has to know. And to your point, Judge Griffin, it is the state's burden. They put Mr. DiBiase on trial. So there can be a federal Jackson violation, even if there is some— Any uncertainty about what Ohio law requires has to be—the state has to bear the consequences of that, not Mr. DiBiase. Thank you. Okay, thanks to both of you for your helpful briefs and oral arguments. We're grateful. Thank you, Mr. Houston, for representing Mr. DiBiase. We appreciate it. He's lucky. The case will be submitted, and the clerk may adjourn court.